SHERAY MALECH, Appellee, v. CUDAHY PACKING COMPANY, Appellant.

**Evidence:** CROSS-EXAMINATION.  Where a witness in a personal injury action had testified on direct examination to the character of the machine causing the injury, and referred incidentally to the fact that plaintiff and his attorney were present when he made the examination of the machine, his cross-examination as to what plaintiff said at that time concerning the happening of the accident was properly rejected.

**Personal injury:** NEGLIGENCE: FAILURE TO WARN.  To put an inexperienced workman at work with a machine, the use of which involves dangers not apparent except on close inspection, and of which the workman does not know or by the exercise of reasonable care can not be expected to discern, without instructing or warning him of the dangers incident to its operation is negligence, and the workman will not be held, as a matter of law, to have assumed the risk.

*Appeal from Woodbury District Court.*—HON. JOHN F. OLIVER, Judge.

TUESDAY, OCTOBER 24, 1911.

ACTION at law to recover damages for injuries sustained by plaintiff, an employee of defendant, while working about an appliance known as a back-fat machine. Trial to a jury; verdict and judgment for plaintiff in the sum of $1,100.  Defendant appeals.  *Affirmed.*

*M. L. Sears,* for appellant.

*Henderson & Fribourg,* for appellee.

DEEMER, J.—The only grounds of negligence submitted to the jury were the following:

That the plaintiff was, and is, unable to speak or understand the English language; that he had never worked with or operated such a machine, or one of similar character before that time, and was wholly and entirely unacquainted with the same or its construction, operation, or workings, and did not know or appreciate any of the dangers incident thereto, and that he was in no manner instructed by the defendant with reference to the same, or warned of the dangers incident to the operation thereof. That after working and operating said machine for a few minutes the same was stopped by reason of being clogged by a piece of skin or some other obstruction, and it became the duty of the plaintiff to remove said obstruction from the knife, and that while engaged in so doing, and without any fault or negligence on the part of the plaintiff, his hand was caught in said machinery, and the first two joints of the little and fourth fingers, and the first joint of the middle finger of his right hand, were cut off, and the hand twisted and stiffened, and rendered out of shape. That said injuries were caused by the carelessness and negligence of the defendant in directing and requiring the plaintiff, who was then and there inexperienced in the operation of such machines, to work with and operate the same, without first instructing him as to the construction and operation thereof, and warning him of the dangers incident thereto, and that the plaintiff did not, by any negligence or want of ordinary care on his part, directly contribute to produce said injuries.

In defense defendant pleaded that plaintiff was a mere volunteer, and was not ordered to work about the machine; that he was himself guilty of negligence contributing to his injury; and that he assumed the risk incident to work about the machine. On these issues and

the testimony adduced, the jury returned a verdict for the plaintiff. Aside from one ruling on the admission of testimony, the only question presented by this appeal is whether or not there was sufficient testimony to justify the verdict; the defendant insisting that the testimony not only shows no negligence on its part, but affirmatively discloses contributory negligence on the part of the plaintiff, and that he assumed all risks incident to the use of the machine.

I.   The ruling on the admission of testimony has reference to the cross-examination of one of plaintiff's witnesses. This witness testified to the appearance and character of the machine, and incidentally referred to the fact that plaintiff and one of his attorneys were with him when he made the examination thereof, for the purpose of describing it to the jury. On cross-examination he was asked as to what plaintiff said at this time regarding how the accident occurred; objections were made to this line of examination, but these were overruled. Plaintiff then made the following motion: "Plaintiff moves the court to strike from the record any statements made by the witness as to statements made by the plaintiff to him with reference to this accident or its occurrence, which statements were claimed by this witness to have been made in the packing house this morning." Upon this motion the court made the following ruling: "I don't remember any that were in there, except such as were made in explaining about this machine, and the operation of the machine which he has attempted to describe here. If there are any other than those, they may go out. (Motion and objection sustained. Defendant excepts.)" Manifestly there was no error here. What plaintiff may have said at this time as to how the accident occurred was not cross-examination, and the ruling was even more favorable to defendant than it was entitled to.

*1. EVIDENCE: cross-examination.*

II.   The burden of defendant's argument on this appeal is that the testimony shows, without substantial dispute, plaintiff's contributory negligence, and his assumption of the risk incident to the use of the machine.   That a jury was justified in finding that plaintiff was ordered to work with the machine without any instructions or warning, and that work about the machine was dangerous, is practically conceded.   Indeed, defendant's main contention is based upon the proposition that the machine was so dangerous, that any man of ordinary prudence and care would have seen and appreciated the danger.   The record does not disclose very clearly the appearance and construction of the machine.   We here quote about all the testimony there is on that subject:

This machine has three or four knives that cut the fat into strips, and only one knife that takes the skin off. . . .   And that knife that takes the skin off is right flat down on the table of the machine?   A. Well, the opening where they put the meat in there, that fits right through the knife, and it is pretty hard to notice the knife.   It is just a little ways out, so it is pretty hard to notice there is a knife there.   There is a drum of the machine that rolls around, and the knife on the table of the machine is on the under side, and it is pretty hard to notice it. . . . Q. Now, when this fat is pulled underneath these round knives, what does it go against to take the fat off of the skin?   A. Well, first the meat catches some of the hooks, and when it turns around a little it comes in contact with about three or four knives, and when it comes to the last knife it takes the skin off. . . .   Q. When it is taking the skin off, the knife is between the fat and the skin, isn't it?   A. Yes.   Q. The fat runs on top of the knife, doesn't it?   A. Yes; the fat is top, and the skin comes under the knife, underneath.   Q. When there is no fat there, the knife is not covered up?   A. No. . . .   I know how the pieces of fat are fed into the machine.   There are teeth that cut the pieces there when they are put in, and then there is some kind of a roller there that rolls it over, and a knife that cuts the meat in slices, and the meat goes over

the machine and under the knife. I have seen the machine clog up. I have seen the man stop the machine when it clogged up. . . .

The only time I examined the machine since the accident, and looked around to see how its different parts are, was this morning, when I went down with my lawyer to the packing house, and we examined the machine together. It was then pointed out where the knife is that takes the skin from the fat, and did not know that there was a knife there until we were down this morning, and it was shown me. This morning I was also shown that in this drum that rolls around there is a sort of a hole that has some teeth in it. I had never seen that hole during the time I was working there the day I got hurt, as I did not have any time to notice it. This morning I saw an opening in the solid drum that has some teeth in it. (It is conceded that the opening is four and one-half inches.) . . . I went to the packing house with the plaintiff and Mr. Fribourg this morning and examined the back-fat machine. We were there about three-quarters of an hour, and made careful examination of what is called the knife that separates the skin from the fat. This knife is about the thickness of a sheet of paper or fingernail from the drum. It looks like a flat piece of iron. There is small bevel on it. It lays right flat on the machine. I noticed a hole in the drum, at about the center. I should judge it was about four and one-half or five inches each way. This hole had something like fingers or teeth in it. . . . The way I noticed that hole in the drum it stopped towards the knife, and I could see the hole between the knife and the drum. When it was running, it went so fast I could not see the hole until it stopped. I could see there was something that separated the fat from the skin. I know that it was some sharp thing to separate it, but I didn't know what it was. I could not really tell where the thing was located. When the machine was running without any fat, I could see this piece of steel across there. . . .

The back-fat machine has a lever overhead to start and stop it, and a loose pulley with a belt on it. There is a sprocket chain or chain belt that runs the machine. In front of the machine is a small table, about level with it. The back fat is put on this table, and when the claws

(fingers) came around they pull the fat through. The operator has nothing to do but lay it on the table, and the claws take it automatically as they come around. The man operating stands on the floor on the south side of the machine, looking north. As these claws take hold of the meat it gradually runs up against a knife and separates the skin, and it goes underneath the knife and the back fat on top. . . . The knife that separates the skin from the fat is right in front, and about four and one-half feet from the man at the truck. If one looked, he could see that there was something separating the skin from the fat. The skin goes down in a box underneath the machine. The drum that revolves goes slowly. There is an opening in it, where the fingers work; it is between four and six inches. When the drum is revolving, and this opening goes by the knife, it is easily seen. It is in plain sight as the drum revolves. One standing at the back of the machine to take away the back fat could see it in plain sight. Sometimes the machine clogs up, because of a soft-skinned back that pulls out. I mean that as the fat strikes the knife the fingers would pull out of the skin, and leave the fat bunched up. When this happens, the drum keeps on revolving. This clogging can not stop the machine. The drum would keep on revolving. There is a lever to start and stop the machine within easy reach of the operator, in plain sight, and one taking back fat away could see it; it is right in front of him. If anyone should operate the lever while he was standing there, he could not help seeing it. . . . The back fat that goes through the machine is sixteen to twenty inches long, and five to six inches wide. . . . The lever that starts the back-fat machine is about six feet from the floor. The drum in the back-fat machine is about twenty inches wide. The opening in the drum is between four and six inches—a square opening in the center of the drum. When the machine clogs, the claws (fingers) let loose of the skin. The machine keeps going, and the fat clogs against the piece of iron that cuts the skin off. When the machine clogs, and you stop the machine, the opening in the drum might stop opposite the knife. There are two open spaces in the drum that hold these fingers. There would be no space between the drum and the knife, ex-

cept at these openings, and the only place you could get your fingers between the edge of this knife and the opening. The knife is about twenty-four inches long and about three and one-half inches wide, and probably one-fourth of an inch thick. The knife runs about pasteboard paper thickness from the drum.

If this be an inadequate description of the apparatus, it is no fault of ours, for it is all that appears in the record. That plaintiff, an inexperienced man, was put to work upon this machine without any instructions or warnings is so well established that defendant's counsel do not now challenge the finding of the jury in this respect, and that a jury might rightly have found that he should have been warned and instructed is also practically conceded.

But it is argued that the danger was so obvious and patent that plaintiff assumed the risk, or, if he did not do this, he was guilty of contributory negligence. A careful examination of the record leads us
2. PERSONAL INJURY: negligence: failure to warn.
to the conclusion that each of these propositions was for the jury, and that the trial court would have been in error, had he directed a verdict for defendant. It is useless to set out the testimony upon which we base our conclusions, for it would unduly extend this opinion. There were hidden dangers about the machine, not apparent except upon close inspection, and a jury was justified in finding that plaintiff did not know of these dangers, and would not, in the exercise of the care required of him, have discerned them. He was at work about the machine but a few hours before the accident occurred, and was not so careless as to justify us in holding that a verdict should have been directed for the defendant. The verdict has sufficient support.

Appellant has filed a motion to strike appellee's abstract, or, in the event this be not done, that the cost of the printing thereof be taxed to appellee. We are of opinion that the motion to strike should not be sustained, but

that the cost of printing thirteen pages thereof should be taxed to appellee, and it is so ordered.

The judgment must be, and it is, *affirmed.*